No. 40.—LATIMER WHITING, & Co. plaintiffs in error *vs.* The administrators of ROBERT WARE, deceased, defendants in error.

[1.] Where an appeal has been entered by the intestate in his lifetime, and the security, good at the time, becomes insolvent pending the appeal, the administrator of the deceased is not bound to give additional security.

Motion to compel the defendants to give additional security on the appeal entered in this case by their intestate in his lifetime. Heard before Judge WRIGHT. In Floyd Superior Court. October Term, 1846.

Motion overruled in the Court below, assigned for error.

For the facts, see the opinion of the Supreme Court.

WILLIAM Y. HANSELL, for the plaintiffs in error.

HOOPER & MITCHELL, and W. AKIN, for the defendants.

*By the Court*—LUMPKIN, J. delivering the opinion.

The plaintiffs in error recovered a judgment against Robert Ware, who entered an appeal, in terms of the law, giving security which was deemed amply sufficient at the time. Ware died pending the appeal, and a motion was made, at the last October Term of Floyd Superior Court, to compel his administrators to give additional security, on the ground, that the original security had become insolvent, or failing to do so, to have the appeal dismissed. Judge Wright refused the application, and this is now assigned as error.

[1.] An appeal being a proceeding unknown to the common law, we must look to our own statutes for guidance in this question. It provides that either party, plaintiff or defendant, being dissatisfied with the verdict of the jury, may enter an appeal, "*provided* the person or persons so appealing shall, previous to obtaining such appeal, pay all costs which shall have arisen on the former trial, and give security for the eventual condemnation money, *except executors and administrators, who shall not be liable to give such security, &c.*" *Prince*, 426.

Latimer Whiting & Co. *vs*. Admrs. Ware.

Is it not manifestly absurd to exempt the representative of an estate from giving any security whatever, when the appeal is entered by him, and to hold him bound to do so, because the security becomes insolvent which was given by the testator or intestate in his life-time? It is true, that the rules of court declare, that "if the security, good at first, becomes insolvent pending the appeal, the party appealing shall give other good security in the discretion of the court, or the appeal shall be dismissed." *Hotchkiss*, 943. But this rule must be construed in reference to the existing laws of the State; and the Judges who framed it, will not be presumed to have intended it to apply to administrators and executors. Even if interpreted literally, as it is insisted it shall be, it does not embrace the present case; it exacts additional security from the "*party appealing*" only; whereas this call is made, not on the original defendant who entered the appeal, but upon his representatives. Did it become necessary to do so, we should unhesitatingly uphold the judiciary act exempting executors and administrators from giving security, and set aside the rule as bench law. We are of the opinion however, that there is no repugnance between them.

Why should these administrators be required to give security? The creditors of the estate are entitled to nothing beyond the assets. That these will be safely kept and legally and faithfully distributed, they have ample security upon the administration bond. Surely it cannot be expected that the administrators will involve themselves or their friends in personal liability apart from the correct administration of the estate. Trustees are never required to go further than to give security for the proper management and appropriation of the trust fund. There is good reason in requiring the party himself if in life, to strengthen the appeal bond before he should be allowed the privilege of litigating his rights longer; he might waste his property and leave his creditor virtually remediless even with a judgment in his favour. But this the administrators cannot do; they have already given security well and truly to administer the goods, chattels and credits of their intestates, and to deliver and pay over the same to such persons as are entitled to the same according to law. *Prince*, 228.

Were more than this demanded, all prudent persons would either decline undertaking the office of administrator, already too onerous, or else they would forbear or refuse to prosecute beyond the first trial, the just claims of their intestate, rather than incur

35

the risk which it would involve. Justice to the rights of widows and orphans, as well as creditors, forbids such a decision.

It is contended, and with a good degree of earnestness, that by adopting the foregoing views, the plaintiff is placed in a worse situation by the death of the defendant than he would have been had he lived; that had the debtor survived, he could have been forced to give additional security, whereas his substitutes are relieved, notwithstanding they may continue the controversy which he left pending at his death.

Perhaps after all, there is some confusion in respect to the legal maxim, *actus Dei nemini facit injuriam*—that no one shall be injured through the act of God. Now it is true, and it would be unreasonable if it were otherwise, that those things which are inevitable, as storms, tempests and lightning, which no industry can avoid, no policy prevent, something in opposition to the act of man, shall not operate to the prejudice of those to whom no laches can be imputed. Thus if a sea bank, or wall, which the owners of particular lands are bound to repair, be destroyed by tempests, without any default in such owners, the Commissioners of Sewers may order a new wall to be erected, at the expense of the whole level. *Rex* vs. *Somerset,* (*Commissioners of Sewers,*) 8 *T. R.* 312.

So, also, where land is surrounded suddenly by the rage or violence of the sea, without any default of the tenant, or if the surface of a meadow be destroyed by the eruption of a moss, this would be no waste, but the act of God; that *vis major* for which the tenant is not responsible. *Simmons* vs. *Norton,* 7 *Bing.* 647.

Again, if the condition of a bond was possible at the time of making it, and becomes impossible by the act of God, the obligor shall be excused. As if a lessee covenants to leave a wood in as good plight as the wood was at the time of making the lease, and afterwards the trees were blown down by a tempest, he is discharged from his covenant. 1 *Reports,* 98.

So much for the illustration of the rule.

On the other hand, it cannot be disputed that death is one of those dispensations of Providence which occasions frequently, not loss merely, but absolute ruin, to innocent sufferers. Take the case of landlord and tenant, where the premises are destroyed by fire, the latter is liable to the payment of rent until the tenancy is determined, although the landlord is not bound to rebuild, notwithstanding he has recovered the value from an Insurance office. *Paradine* vs. *Jane, Aleyn's R.* 27.

By the common law, the death of a *sole* party to a suit pending the proceding, was always productive of delay and expense by the abatement of the action.   In *personal* actions the right itself is forever gone.   Where credit is extended, not upon the property, but the probity of the debtor, his death, which is the act of God, takes from the creditor all hope of re-imbursement; so that were it true, as urged by the plaintiff in error, that under this construction, by the death of Ware he is placed in a worse condition than he was before, still that would interpose no legal objection to the doctrines.   And, whatever else may or may not inflict an injury, it is our province to see to it, that the law works no wrong in our hands.   That *actus curiæ meminem gravabit.*

The judgment of the Court below must be affirmed.